383 So.2d 1344 (1980)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiffs-Appellees,
v.
Darrel VAN WILLET, Jr. et ux., Defendants-Appellants.
No. 7556.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Rehearings Denied May 29, 1980.
*1347 Gold, Little, Simon, Weems & Bruser, Charles S. Weems, Alexandria, for defendants-appellants.
Bryan Miller, Baton Rouge, for plaintiffs-appellees.
Before GUIDRY, CUTRER and DOUCET, JJ.
GUIDRY, Judge.
This is an expropriation suit instituted by the State of Louisiana, through the Department of Transportation and Development (hereafter referred to as the Department), against Darrell Van Willet, Jr. and Lizbeth Anne Lofton Willet, under the provisions of LSA-R.S. 48:441 et seq., commonly referred to as the "quick taking" statute.
Plaintiff deposited the sum of $993.00 in the registry of the court as the estimated just compensation for the taking of one parcel in fee and four parcels constituting temporary construction servitudes. All takings affected only parts of larger tracts upon which there existed rental duplexes belonging to defendants. After withdrawing the funds on deposit, the Willets filed an answer praying that the value of the property interests taken be fixed at a sum substantially greater than the amount deposited and that an additional sum be awarded to them as damages. Defendants further alleged that they are entitled to an award of attorney's fees equal to 25% of any excess award as well as expenses of litigation, i. e., the cost of appraisals, expert witness fees, and the cost of exhibits. After trial, judgment was rendered by the trial court fixing just compensation at $813.53. Accordingly, defendants were ordered to pay back the difference between the deposit and the amount awarded, $173.47, together with legal interest from the date of withdrawal of the said estimated compensation. The trial court also rejected defendants' demands as to attorney's fees and expenses. From this judgment defendants have appealed.
The subject properties are located in the extreme northern portion of Rapides Parish near the Grant Parish line and were originally part of Aurora Park Unit II, a planned 49 lot multi-family residential subdivision (see Appendix A, adopted from defendants' brief which graphically illustrates the subdivision as planned and location of all subject parcels and the improvements thereon). Aurora II, as planned, lies between the Dresser Industrial Valve Plant, which adjoins to the west, and the original Aurora Park, a single family residential subdivision, which adjoins to the east. The northern boundary of Aurora II abuts commercial property which fronts on U.S. Highway 71. As originally designed, Aurora II was to have access to U.S. 71 through the single family Aurora Park and suffer no through traffic. The internal streets of Aurora II either had a cul-de-sac turn around or else dead ended at the Dresser Industry property line to the west. However, in 1972, as Aurora II was being developed and prior to the completion of all planned roads and sewer lines, the Department gave advance notice that they were intending to build an expressway through the planned subdivision and ordered construction to be halted on lots lying to the west, north, and south of Austin Drive and on the commercial areas to the north. Termed as advance takings, the above mentioned areas were acquired by the Department in May, 1973. Defendants' property and duplexes, located on the east side of Austin Drive and then under construction, were not a part of the advance takings and the Department indicated that no takings would be required from these properties. However, the project plans were subsequently revised to require construction servitudes and a partial taking from defendants' *1348 property for project work on and along Austin Drive which was incorporated into the Department's project as a frontage road for the north leg of the expressway.
Pursuant to a court order of expropriation dated March 31, 1978, the Department acquired the subject property consisting of five tracts or parcels of land (identified by the Department in its petition and at trial as Parcel Nos. 7-6, 7-6-C-1, 7-8-C-1, 7-15-C-1, and 7-19-C-1) to be taken from the lots owned by the Willets fronting the east side of Austin Drive.[1] Parcel 7-6 was taken in full ownership minus mineral rights, and involves a triangular area of 85.9 square feet on the northwest corner of Lot 45. The other four parcels taken were temporary construction servitudes for a period of time not to exceed the construction of the project that varied in depth of taking from the front property lines along the easterly side of Austin Drive. Parcel 7-6-C-1 has a 20 foot depth and runs along the front of lots 45, 46, and the adjoining 30.5' of Lot 47. Two duplexes are located on these three lots. Parcel 7-8-C-1 has a 20' depth and runs along the entire front of lot 48 and has a single duplex located thereon. Parcel 7-15-C-1 has a 15.03' depth and runs along part of lots 2 and 4, and all of lot 3. Two duplexes are located on these three lots. Finally, Parcel 7-19-C-1 has a 15.03' depth and runs across a part of lot 5 and all of lot 6 on which two lots is situated a single duplex improvement. (See Appendix A).
Attached to plaintiff's petition, as required by LSA-R.S. 48:442(3)(d), is a Certificate of Estimate of Just Compensation which estimates the value of the property interests taken at $503.00, with damages estimated at $490.00, for a total estimated compensation in the amount of $993.00. This estimate was made by two of the Department's right-of-way appraisers, Carl A. LeBlanc and Craig W. Thomas, whose signatures appear thereon.
In answer, defendants alleged the just compensation due for the taking of the property and improvements, viz., landscaping, improvements and drives, amounts to $3000.00. Further, defendants alleged that just compensation for the temporary construction servitudes and the loss occasioned thereby equals the sum of $60,000.00 and in the alternative, defendants argued this sum constitutes an item of severance damage for which they are entitled to separate compensation. Still further, defendants alleged that as a result of the taking, the market value of the remaining property was reduced by $65,000.00 because of the effects of the project, namely, loss of privacy and aesthetic value, increased traffic, noise, fumes and vibrations, increased drainage on servient estate, and changes in traffic patterns and status of access. Total compensation and damages claimed by defendants totalled $128,000.00.
A major portion of the damages defendants claimed in their answer constitutes estimated damages from the future utilization of the temporary construction servitudes which transversed the fronts of the lots. The Department's plans as originally drawn apparently would have required a permanent drainage structure built upon the temporary construction servitudes area. Defendants' contention was that such a use would have made the duplexes inaccessible during the construction period and would have deprived them of all rents as well as having a lasting detrimental economic impact on the market value of the property as a whole after construction. On April 23, 1978, three days before trial, the Department changed the project plans in order to delete construction in the servitude areas. *1349 As a result of the changes made, there was no longer any need for the temporary construction servitudes taken and the Department filed and recorded a release of said servitudes affecting defendants' properties. Specifically, the Department released the unused servitudes previously acquired and designated as Parcels 7-6-C-1, 7-8-C-1, 7-15-C-1 and 7-19-C-1. A copy of said release was presented and filed into evidence at trial before the close of the taking of evidence. Although the Department held the servitudes for 13 months, no construction or use of any kind was exercised by the Department in regard to the property subject to these servitudes.
The trial court, in its determination of land value for purposes of compensation for the fee taking and servitude rental values, fixed the square foot value of the subject property at $.79. For purposes of fixing the compensation for the servitudes the trial court considered the release of the servitudes during trial and fixed the term at 13 months. Accordingly, the trial court figured compensation as follows: for the taking in fee of Parcel 7-6, 85.9 square feet × $.79 per square foot = $67.86; for the temporary construction servitudes, 7319.1 square feet (total area of servitudes) × $.79 per square foot × .13 (13 months at 1%[2]); total compensation for the taking in fee and the servitudes, 67.86 plus 751.67 = $819.53.
The trial court rejected defendants' claim for severance damages as it found that the actual takings of either the parcel in fee or the servitudes had no detrimental effect on the remaining property. Such a finding limited the defendants' recovery to the trial court's determination of compensation of $819.53. The amount awarded being less than the amount deposited, the trial court followed the dictates of LSA-R.S. 48:456(B)[3] and gave judgment in favor of the Department. Because there was no excess award on the basis of severance damages, defendants' other demands were rejected by the trial court.
Through defendants' specifications of error, the following issues are raised for our consideration on this appeal:
(1) Whether the trial court erred in fixing the valuation of the subject property at $.79 per square foot;
(2) Whether it was error for the trial court to consider the release of the construction servitudes in its determination of compensation for their rental value;
(3) Whether severance damages are due defendants for the takings, and if so, to what extent; and
(4) Whether defendants are entitled to attorney's fees, cost of appraisals and exhibits, and expert witness fees.

LAND VALUATION
The Louisiana Constitution of 1974, Article 1, Section 4, provides that property taken or damaged shall be compensated for justly and to the full extent of the loss to the owner. The legislature, in implementing these constitutional directives, has clearly delineated the method of determining both compensation and damages to be awarded in expropriation cases. LSA-R.S. 48:453 provides as follows:
"A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.

B. The measure of damages, if any, to the defendant's remaining property is determined *1350 on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.

C. The owner shall be compensated to the full extent of his loss.
D. The defendant shall present his evidence of value first.
E. Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court."
Four expert witnesses testified in regard to the basic issue of land value at the trial. Testifying on behalf of the defendants were Darrel V. Willet, Sr. and Perry E. Futrell, who set the value of the subject property at $.94 and $1.00 per square foot, respectively. Experts for the Department, Gene Cope and M. C. Gehr, valued the property at $.79 and $.55 per square foot. The trial court found that, after considering all the testimony, the adequate and just before-taking value of the subject property for purposes of compensation was $.79 per square foot. Defendants contend that the value should be set at $1.00 per square foot.
The determination of the value of land for compensation in expropriation cases, as in the instant suit, is necessarily dependent upon evidence presented in the form of opinion from expert witnesses. It is the particular province of the trial judge to weigh the credibility and expertise of such witnesses in his determination of valuation. Our jurisprudence mandates that an appellate court should not alter the trial court's finding in such cases absent abuse of discretion or manifest error. The trial court's finding is fully supported by the opinion of one of the experts, Gene Cope. Also after our review of all the appraisals and considering that the values suggested by the appraisers ranged from $.55 to $1.00 per square foot, we are of the opinion that the finding of $.79 per square foot is reasonable and just and that the record in no way indicates that the trial court was clearly wrong in so finding.

VALUATION OF TEMPORARY CONSTRUCTION SERVITUDES
Defendants' basic argument regarding the valuation of the servitudes taken is that it was erroneous as a matter of law for the trial court to consider after-taking facts, i. e., the cancellation of the servitudes, in its determination. Defendants contend that the proper term of the servitudes should be measured by the expected life of the project as of the date of the taking. We find defendants' contention to be without merit.
In the case of temporary or limited duration servitudes, just compensation is generally expressed as the fair rental value of the property affected over the life of the servitude. State v. Lutcher & Moore Cypress Lumber Co., Ltd., 364 So.2d 134 (La. App. 4th Cir. 1978). In instances where the term of the temporary servitude is unknown, it would indeed be proper to use the estimated life of the project as the missing term in the calculation of temporary construction servitude values. In the instant case, however, the life of the temporary servitudes is not a missing element to be estimated, but a definite time, i. e., 13 months. Had the trial judge ignored this "after-taking" fact, it would have been contrary to right reason and incongruous to a concept implicit in the constitutional scheme of compensation. While a landowner who has property taken for a public purpose must be put in as good a position pecuniarily as he would have been had his property not been taken, he ought not, however, recover more than that which he has actually suffered, nor be compensated for more than has been taken from him. We have found no jurisprudence to support the *1351 conclusion defendants urge and conclude that such a conclusion is not compelled by LSA-R.S. 48:453, supra. Accordingly, we find the method and calculation of the fair rental value of the temporary construction servitudes by the trial court to be correct.

SEVERANCE DAMAGES
In any discussion of the issue of damages arising from an expropriation, it is vital to a proper understanding of the outcome that the terms employed be defined. In offering these definitions we note that legal concepts seldom fit precisely into sharply defined terms. Our intention is solely to add clarity to this opinion, and hopefully reflect what is the general correct understanding of the terms in light of the principles established in our jurisprudence. The term "severance damage" describes those compensable injuries which flow from the partial expropriation of a parcel, specifically, the diminution in value of the land remaining to the condemnee. The term "consequential damages" has been used broadly to describe any damages resulting in a non-taking situation whether compensable or not. The term "consequential damage", for our purpose, refers to compensable special injuries to a parcel from which there was no taking, which flow from the effects of the public work or project, which injuries particularly affect his property only and which are not sustained by the neighborhood generally. And finally, the term "incidental damages" refers to the general loss or inconvenience experienced by the property owner and the public generally which is a cost that every citizen in organized society must pay to maintain and improve that society; in other words, "damna absque injuria."
The measure of severance damage is the subject of LSA-R.S. 48:453(B), supra, which clearly sets forth that where there is a partial taking, the measure of damages to the remaining parcel is the difference between the value of the parcel immediately before the taking, without taking into effect the public works or project; and, the value of the parcel immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
In the instant suit, the trial court found no difference between the before/after values as to any of the parcels involved, either temporary servitudes or fee, in spite of the fact that all four expert appraisers were of the opinion that defendants' properties were indeed depreciated because of the total effect of the project. In reaching this conclusion the trial court stated:

"The law does not support an award as sought by defendant. The test is whether, in judging this piece of property, this taking renders the remaining property less valuable. If the taking subjects the remaining property to noise, fumes, and vibration which renders this property less valuable in its highest and best use, the landowner is entitled to appropriate consequential damages. In our case however, the actual taking of either the parcel or the servitude did not subject the remaining property to any increase (sic) noise, fumes or detriment it would not have suffered had the taking not occurred. The road is no closer, the noise no more resounding, the effect no more manifest."

As we understand the trial judge he concluded that although the properties owned by defendants may have been diminished in value by reason of increased noise, traffic, etc., such diminution in value was non-compensable because the actual takings from defendants' properties did not cause such diminution in value, rather it was occasioned by reason of the overall effect of the project. In sum he concluded that such damages were damna absque injuria. We find this determination of the learned trial judge, as concerns parcel 7-6, to be erroneous and contrary to the decision of the Supreme Court in State of Louisiana, Through the Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111 (La. *1352 1971). In Garrick, supra, the court considered the overall effect of the contemplated public work on the properties involved and determined that "noise and vibration are not damna absque injuria" and that if such condition causes a diminution in value to the remainder of properties ACTUALLY TAKEN, severance damages are allowable even though such damages are not peculiar to the complaining owner but rather are suffered by the neighborhood generally. In Garrick, supra, severance damages were allowed not because the remainders were damaged because of the taking of the narrow strips from the fronts of the properties (4½ feet and 5½ feet, respectively) rather because the total effect of the contemplated public work subjected the properties to increased traffic, noise and vibration which in turn depreciated their value. It is important to note however, that in Garrick, supra, the court was careful to make a distinction between damages that will be paid when there is no taking and the damages to be paid when there is the slightest partial taking, even though in fact the damages suffered in both instances may be the same in kind and in degree. In the former no damages are allowed (Reymond v. State Department of Highways, 255 La. 425, 231 So.2d 375 (La.1970) however, in the latter instance they are compensable.
In view of the trial court's error, we now decide the question of damages. We do so in light of Garrick and Reymond and make a distinction for the purpose of categorizing the damages sustained by defendants between the tract from which there was an actual taking in fee (Parcel 7-6 from the tract consisting of Lots 45, 46, and part of 47 upon which are two duplexes) and the independent and separate tracts from which the Department took 13 month servitudes which were never used. Defendants are clearly entitled to severance damages to the former tract; whereas, in regard to the latter tracts, we are of the opinion that unused temporary construction servitudes released and terminated prior to close of trial are equivalent to non-takings for purposes of categorizing and determining the compensability of damages flowing from the effects of a public work or project. We believe such conclusion to be warranted because the amount of severance damages awardable is determined as of the time of trial and for the further reason that an actual taking is required before severance damages are allowed except in instances where the landowner suffers special damages not sustained by the public in general. Judge Hood commented on this latter element in Gulf States Utilities Co. v. Comeaux, 182 So.2d 187, at 189 (La.App. 3rd Cir. 1966), cited approvingly in State, Department of Highways v. Garrick, 256 So.2d 111 (La. 1971):
"We agree with defendant that a physical invasion of real property or of a real right is not indispensable to the infliction of damages within the meaning of the provisions of Article 1, Section 2, of the Louisiana Constitution. However, consequential damages to a separate and independent tract of land, no part of which is physically taken or invaded for public purposes, are not recoverable unless the owner sustains special damages, caused by the public works, which peculiarly affect his property only and which are not sustained by the public or neighborhood generally."
Our examination of more recent jurisprudence does not suggest a different outcome; rather, the cases show that severance damages have been awarded only upon the actual physical taking or invasion of the landowner's real rights. State, Dept. of Highways v. Bland, 355 So.2d 283 (La.App. 2nd Cir. 1978); State, Dept. of Highways v. United Pent. Ch. of Hodge, 313 So.2d 886 (La.App. 2d Cir. 1975); Greater Baton Rouge Airport Dist. v. Hays, 339 So.2d 431 (La.App. 1st Cir. 1976), writ denied 341 So.2d 403; State, Dept. of Highways v. Cangelosi, 290 So.2d 806 (La.App. 1st Cir. 1974). Accordingly, as there was no part of *1353 defendants' property physically taken or invaded, other than Parcel 7-6 from the tract consisting of Lots 45, 46 and part of 47, damage to defendants' other tracts are compensable only upon a showing of "special" damages, i. e., injury which peculiarly affects his property only. In this regard, the record does not reflect that the damage suffered by defendants are particular to their property only. The advent of this expressway will expose all other owners along Austin Drive and closely adjacent lots of the original Aurora Subdivision to the same conditions. Accordingly, we conclude that the impact of the project produces purely incidental damages to the unused construction servitude parcels.
The detrimental effects of the project were identified by the appraisers Willet, Futrell, and Cope as follows: proximity to a 4-lane expressway with elevated grade; change in beauty and aesthetic values; change in basic neighborhood from quiet, wooded residential to frontage road property; and, increased noise, vibration and fumes. The experts' conclusions of how these adverse effects affect the market value of defendants' properties with regard to before and after value are summarized as follows:

 Willet Futrell Cope Gehr
(Remainder)
Before 252,985 246,119 199,930 125,000
After 164,471 172,284 153,000 94,500
 _______ _______ _______ ______
Indicated
Damages 88,513 73,835 46,930 30,500
% 35% 30% 23.5% 24.4%

The above summarization takes into consideration all of defendants' properties with the twelve duplexes. However, as aforestated, applying the rationale of Garrick and Reymond, we consider and award damages solely on the basis of a decrease in market value to the tract from which Parcel 7-6 was taken.
Only defendants' experts broke down their severance damage figures to show severance damage to each particular tract. For the parcel 7-6 tract Futrell figured damages at 30% of remainder, less fee taking, or $24,475.00. Willet based his figure on a severance damage of 35% of remainder, less fee taking, or $29,333.00. As shown in the above summarization, the Department's experts' valuation figures for the total properties are substantially less than defendants' experts. We are convinced by our examination of the record that the large variance in calculations is attributable to the Department's experts' erroneously taking into account the effect of the project in their before valuations. For that reason we disregard their valuations. We have carefully examined the reports of Messrs. Willet and Futrell and consider the latter's to be reasonable and adequately supported. Accordingly, we conclude that defendants are entitled to recover severance damages in the total sum of $24,475.00.

ATTORNEY'S FEES
In expropriation proceedings reasonable attorney's fees, up to a maximum of 25%, may be awarded by the court if the amount of the compensation deposited in the registry of court is less than the compensation awarded in the judgment. LSA-R.S. 48:453. Since the trial judge concluded that the amount deposited by the State, i. e., $993.00, exceeded the compensation due he made no award of attorney's fees. We have determined that the award made by the trial court should be increased from the sum of $819.53 to the sum of $25,294.53. Therefore defendants are entitled to an award of attorney's fees based upon the difference between the award made and the amount deposited in the registry of court. Under the circumstances of this case we consider that an award of attorney's fees in the amount of $5000.00 is appropriate.

COSTS
The trial court made no award to compensate for the expert fees of Messrs. Willet and Futrell concluding that their opinions were of no benefit. Likewise the *1354 trial court refused to tax as costs the amount of $545.88 for the expense of photographs used by defendants' experts and introduced as exhibits in these proceedings. We conclude that this was error. The experts who testified in this proceeding on behalf of defendants both filed detailed, documented and well reasoned reports. This court has in fact accepted the opinion of Mr. Futrell in setting the award of severance damages due defendants in connection with parcel 7-6. (Both of defendants experts are entitled to reasonable compensation for their appearance in court and for preparatory work done. LSA-R.S. 13:3666; State, Dept. of Highways v. Mims, 336 So.2d 24 (La.App. 3rd Cir. 1976) writ denied 339 So.2d 16 (La.1976). Likewise the cost incurred for photographs introduced as exhibits in this proceeding should be taxed to the Department. We consider that an award to each of defendants' experts in the amount of $2500.00 will reasonably and adequately compensate for preparatory work and their appearance at trial. The above amounts will be taxed as court costs for which the Department is liable. Alexander v. State Department of Highways, 342 So.2d 1201 (La.App. 2nd Cir. 1977) and cases therein cited; LSA-R.S. 13:5112.
For the reasons assigned the judgment is affirmed in part, amended in part and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein fixing the just compensation due defendants, Darrel Van Willet, Jr. and Lizbeth Anne Lofton Willet by the State of Louisiana, Through the Department of Transportation and Development, in the amount of TWENTY-FIVE THOUSAND TWO HUNDRED NINETY-FOUR AND 53/100 ($25,294.53) DOLLARS, subject to a credit in favor of the State of Louisiana, Through the Department of Transportation and Development, in the amount of NINE HUNDRED NINETY-THREE AND NO/100 ($993.00) DOLLARS, with legal interest on the net amount awarded herein pursuant to the provisions of LSA-R.S. 48:455.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the fees of the expert witnesses, Darrel V. Willet, Sr. and Perry E. Futrell, Jr., be fixed at the sum of $2500.00 each and taxed as costs in these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Darrel Van Willet, Jr. and Lizbeth Anne Lofton Willet are awarded judgment against the defendant, State of Louisiana, Through the Department of Transportation and Development, in the amount of $5000.00 as attorney's fees under the provisions of LSA-R.S. 48:453.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the State of Louisiana, Through the Department of Transportation and Development pursuant to the provisions of LSA-R.S. 13:5112 be taxed with all costs of these proceedings in the trial court, including the fees of defendants' expert witnesses and the cost of photographs introduced by defendants as exhibits in these proceedings, the total costs incurred at the trial level for which the Department is cast being fixed at the sum of $6,170.88.
Costs of this appeal in the sum of $703.50 are taxed to the Department.
AFFIRMED IN PART, AMENDED IN PART AND RECAST.
*1355 

*1356 ON APPLICATIONS FOR REHEARING
PER CURIAM.
In application for rehearing defendants-appellants have called our attention to errors in our original opinion which concern the exact amount of costs at the trial and appellate level which are assessable to the State of Louisiana under the provisions of LSA-R.S. 13:5112. In our original opinion we concluded that under the cited statute the State of Louisiana should be assessed with all costs of these proceedings in the trial court, including the fees of defendants' experts and the cost of photographs introduced by defendants as exhibits in these proceedings, and fixed such costs at the total sum of $6170.88. We likewise concluded that the State of Louisiana was responsible for the costs of the appeal which we fixed at the sum of $703.50. A re-examination of the record in this case reflects that we committed a clerical error in calculating the costs incurred at the trial level and on appeal the total costs at the trial level, including expert fees and cost of photographs, being the sum of $5841.44, and the total cost of this appeal amounting to the sum of $838.00.
Accordingly, we grant a rehearing in this case for the limited purpose of amending our opinion previously rendered so as to reflect the correct amount of costs for which the State of Louisiana is responsible under the provisions of LSA-R.S. 13:5112. To that end we amend the final two paragraphs of our decree as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the State of Louisiana, Through the Department of Transportation and Development pursuant to the provisions of LSA-R.S. 13:5112 be taxed with all costs of these proceedings in the trial court, including the fees of defendants' expert witnesses and the cost of photographs introduced by defendants as exhibits in these proceedings, the total costs incurred at the trial level for which the Department is cast being fixed at the sum of $5841.44.
Costs of this appeal in the sum of $838.00 are taxed to the Department."
In all other respects the judgment previously rendered by us is re-instated and made the final judgment of this court. Further, except as set forth above the applications for rehearing filed by appellee and appellants are denied.
NOTES
[1] The taking was authorized by the Secretary of the Department in a Certification of Authorization to Expropriate, dated and signed October 13, 1977, and falls under the heading of State Project No. F-05-01 (001), Tioga-Gentley Highway (US 71US 167/71) State Route La. 3026, Rapides Parish. This project provides for the construction of a controlled access four-lane divided highway from the existing Alexandria-Pineville Expressway to the general area of the Highway 71-167 intersection near the Rapides-Grant Parish line.
[2] The 1% per month represents what the consensus of appraisers considered the proper rental factor for servitudes over property such as in the instant suit.
[3] LSA-R.S. 48:456(B) states:

"If the amount finally awarded is less than the amount so deposited, the court shall enter judgment in favor of the department and against the proper parties for the amount of the excess, together with legal interest from the date of withdrawal of the deposit to the date of payment."