488 So.2d 754 (1986)
MICHIGAN WISCONSIN PIPELINE CO., Plaintiff-Appellant,
v.
Dr. Ardley HEBERT, et al., Defendants-Appellees.
No. 85-590.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*755 George Wear, Jr., of Shotwell, Brown & Speary, Monroe, for plaintiff-appellant.
Roger E. Boynton, Abbeville, for defendants-appellees.
*756 Before GUIDRY, PICKETT and TUCK,[1] JJ.
GUIDRY, Judge.
In this condemnation proceeding Michigan Wisconsin Pipeline Company, now ANR Pipeline Company, sought expropriation of a permanent right of way 30 feet in width, together with a temporary work space area, for the construction, operation and maintenance of a six inch natural gas pipeline across two tracts of land in Vermilion Parish, a 160 acre tract (Tract 1) and a 37.10 acre tract (Tract 2) owned by Dr. and Mrs. Ardley Hebert. The defendants' land is located approximately eight miles southeast of Abbeville.
After negotiations between the parties failed, Michigan filed the instant suit. Defendants answered the petition on October 8, 1979. On October 12, 1979, the parties entered into a joint stipulation whereby defendants waived "all defenses" to the expropriation suit; admitted that plaintiff had a "right to expropriate the right of way as shown on the plat" (see map attached as appendix A); and, admitted that plaintiff had a "right to enter upon said right of way in exercise thereof". The parties further agreed that defendants "specifically reserve their right to contest the issue of just compensation for the property sought to be expropriated and claims for damages to the remaining property." Pursuant to this joint stipulation, a judgment styled "Judgment of Entry" was signed on October 17, 1979, basically reciting, in more minute detail, the admissions and reservations set forth in the joint stipulation.
Plaintiff entered the property after the "Judgment of Entry" was signed and finished construction, clean-up and use of the temporary work space by May 6, 1980, approximately seven (7) months later.
In March, 1984, the defendants caused the issues of just compensation and damages to be fixed for trial. After trial on the merits, the court concluded that plaintiff owed defendants the full sum of $29,040.00.[2] The $29,040.00 was broken down as follows: $7,344.00 for the permanent right of way; $1,696.00 for the temporary work space; and, $20,000.00 for severance damages. Judgment was rendered and signed awarding the total sum aforesaid together with judicial interest from October 17, 1979 until paid, attorney's fees in the amount of $2,508.00, and all costs of the proceedings.
Plaintiff appealed. Defendants do not appeal nor do they answer plaintiff's appeal.

ISSUES
1. Did the trial court err in holding that the right to recover severance damages was not extinguished by the liberative prescription of two years, as provided for by La.R.S. 19:2.1 B.
2. Did the trial court err in awarding compensation to defendants for the temporary work space area based on a rental value of two years.
3. Did the trial court err in finding that the remaining property of defendants was damaged by the permanent right of way taken, and, if not, did the trial court err in awarding an excessive amount of severance damages.

ISSUE NO. 1
In his pre-trial brief, plaintiff alleged that the right of defendants to compensation for damages to the remaining property due to the expropriation had prescribed. Plaintiff did not file a peremptory exception of prescription. On appeal, plaintiff reurges, in brief only, that defendants' right to claim severance damages has prescribed.
*757 La.C.C.P. art. 927 states specifically, in pertinent part, that "[t]he court cannot supply the objection of prescription, which must be specifically pleaded". The same is true on the appellate level. The appellate court may consider the peremptory exception of prescription for the first time, if the exception is properly pleaded before submission of the case for a decision, and if proof of the ground of the exception appears of record. La.C.C.P. art. 2163.
The jurisprudence has been firm and clear on this issue. The peremptory exception of prescription, whether urged at the trial level or on appeal, must be presented in a formal pleading, it cannot be injected into the proceedings by brief or by oral argument. Motor Machine & Supply Co. v. Delilah Towing Co., Inc., 321 So.2d 896 (La.App. 1st Cir.1975), writ denied, 325 So.2d 279; Eschete v. Gulf South Beverages, 442 So.2d 556 (La.App. 1st Cir.1983); Emond v. Tyler Building and Const. Co., Inc., 438 So.2d 681 (La.App. 2d Cir.1983).
This issue was not properly before the trial court and is not properly before this court.

ISSUE NO. 2
During the trial on the merits, three experts testified and offered their opinions as to the amount that should be awarded to defendants for the temporary and extra work space area that Michigan used in constructing the six inch pipeline. The trial court, in its written reasons, found the testimony of defendants' expert, Cecil B. Gremillion, more correct than that of plaintiff's experts. Relying upon Gremillion's opinion and calculations, the court awarded $1,696.00 as compensation for use of the temporary work space area.
Appellant urges that such an award was clearly erroneous since Gremillion based his calculations upon a two year rental value of the work space area.[3] In brief, appellant urges that it would not complain of an award based upon a fair rental value of the property for one year since the land was used for crop production. Appellant concedes that a disturbance of crop land for seven months would probably prevent use of the land for a one year period. Appellant further concedes that the trial court "could reasonably have adopted any of the three formulas for computation of fair rental value of the property advanced by the three appraisers", but only for a period of one year. Hence, appellant's only contention is that the court should not have used the two year rental value period even after accepting the rest of Gremillion's mathematical formula.
Gremillion offered two formulas, one for the temporary work space and the other for the extra work space, to determine the value of the temporary taking involved in the use of the land. These calculations included the acreage involved times the fair market value of the acreage times ten percent of the value of the property times two years, i.e.:
Temporary Work Space
1.44 acres × $4000 (f.m.v.) = $5760 × 10% = $576.00 × 2 years (assumed period of rental) = $1152.00
Extra Work Space
.68 acres × $4000 (f.m.v.) = $2720 × 10% = $272 × 2 years (assumed period of rental) = $544.00
Total $1152.00 + $544.00 = $1696.00
In the case of temporary or limited duration servitudes, such as temporary and extra work space, just compensation is generally expressed as the fair rental value of the property affected over the life of the temporary servitude. State Dept. of Transp. & Dev. v. Van Willet, 383 So.2d 1344 (La.App. 3rd Cir.1980), writ denied, 390 So.2d 1337 (La.1980); State v. Lutcher & Moore Cypress Lumber Co., Ltd., 364 So.2d 134 (La.App. 4th Cir.1978), writ denied, 366 So.2d 562 (La.1979).
*758 In the instant case, the "Judgment of Entry" was rendered and signed on October 17, 1979. At the hearing the parties stipulated that construction and clean-up of the pipeline was completed by May 6, 1980. Thus, the temporary and extra work space was only used for approximately seven months.
Mr. Gremillion testified that it was his experience that pipelines and their construction usually affected the temporary and extra work space for two years. He also made a general statement about the "plow depth" being adversely affected. However, he did not elaborate on these contentions and did not testify that the particular land in this case had indeed been affected for two years.
Since the record makes clear that construction and clean-up had been accomplished within seven months, and since there is no evidence that the temporary and extra work space was affected for any greater length of time than seven months, the court was clearly wrong in using Gremillion's two year figure in calculating the damages to be awarded defendants for the use of the temporary and extra work space. Because plaintiff concedes that the land in question could reasonably have been affected for one year, and concedes that, other than the two year figure, Gremillion's formulas are just as valid as his own appraisers, we will adopt the Gremillion formulas with a one year rental figure in amending the trial court's award for use of the temporary and extra work space area.

ISSUE NO. 3
Appellant next contends that defendants did not establish by competent evidence that they incurred severance damages on the remaining property located outside the permanent right of way. We agree with the trial court that defendants did establish a right to severance damages insofar as concerns those portions of the subject tracts fronting the public roads.
The burden is imposed upon the landowner to establish his right to severance damages and the amount thereof by a reasonable preponderance of the evidence. Missouri Pacific R. Co. v. Nicholson, 460 So.2d 615 (La.App. 1st Cir.1984), writs denied, 462 So.2d 185, 186 (La.1985); State, Department of Highways v. Landeche, 400 So.2d 241 (La.App. 4th Cir.1981), writ denied, 406 So.2d 609 (La.1981).
In order to determine if a party has a right to severance damages, a determination of the highest and best use of the property allegedly affected by the partial taking must be made. The highest and best use of property is the most favorable employment to which it is adaptable and may reasonably be put in the not-too-distant future. Faustina Pipe Line Co. v. Broussard, 450 So.2d 17 (La.App. 3rd Cir. 1984), writ denied, 452 So.2d 172 (La.1984); and cases cited therein.
Mr. Gremillion, defendants' expert, and Mr. Chappuis, one of appellant's experts, testified that the outer layer of each tract, called tier 1, along the public roads could reasonably be used for rural homesite development. They estimated that the rural homesites would have a depth from 208 feet to 210 feet. All of the experts agreed that defendants' property was high, well drained and level.
Defendants' real estate appraiser, Gremillion, was thoroughly familiar with the local market. He had been in the real estate business in Vermilion Parish for some 20-30 years. He testified that he had developed a rural subdivision on Big Woods Island to the east of defendants' property. The land involved in that development was equally as remote as defendants' property. He was convinced that defendants could develop a rural subdivision on Tracts 1 and 2 just as easily.
Gremillion opined that Tract 1 could be developed in three tiers. Tier 1 would consist of homesite lots along the road frontage of each tract for a depth of 210 feet. Tier 2, directly behind tier 1, would also consist of homesites with depths of 210 feet. Tier 3, or the remainder of the property, would be left for agricultural purposes. Gremillion used a two tier model *759 for Tract 2, road frontage for a depth of 210 feet for homesite development, and the remainder for agricultural purposes.
Mr. Angers, one of plaintiff's experts, stated that the highest and best use of the land would be agricultural. He performed his initial study in 1979. At that time the land was being used for rice production. On cross examination, he noted that in the five years since his study no changes had been made, the land was still being used for agricultural purposes.
Mr. Chappuis, plaintiff's second expert, opined that the road frontage property could be used for rural homesite development with the remainder used for agricultural purposes. He gave the road front homesites an estimated depth of 208 feet.
The trial court found that the highest and best use for part of the property was rural subdivision development while the highest and best use for the remainder was agricultural. In his reasons for judgment, the trial judge stated as follows:
"... The Court does not believe that the highest and best use of all the property at the time of the taking was for purposes of rural subdivision, but a substantial part was, especially the outer acres of the property. The innermost portion of the property may become suited for subdivision development in the future; however, the Court believes at the time of the taking its highest and best use was agricultural."
It is clear from the trial judge's reasons that he rejected Angers' determination of highest and best use of the acreage fronting the public road and accepted the opinions as to adaptable use advanced by Gremillion and Chappuis. However, what is not clear is whether the court accepted or rejected Gremillion's opinion that the acreage designated by him as Tier 2 was likewise suitable for rural homesite development, since he simply refers to the area suitable for that purpose as "the outer acres of the property".
We find that the record supports the trial court's determination that the area of Tracts 1 and 2 fronting the public roads had a highest and best use for rural homesite development. The land is relatively close to the small village of Henry. Parish Road P-2-4 (see appendix maps A & B), which runs in a north-south direction on the east side of Tract 1 is blacktopped to the northeast corner of Tract 1. According to one of appellant's real estate appraisers, it is reasonable to assume that P-2-4 will soon be blacktopped along the full length of the eastern side of the tract. Such blacktopping will be conducive to rural homesite development. Parish Road P-2-1, along the north side of Tract 1, is a dead-end gravel road. Parish Road P-2-33, along the south side of Tract 2, is also graveled.
However, to the extent that the trial court may have accepted Mr. Gremillion's conclusion that Tier 2 of Tract 1 was also suitable for rural homesite subdivision development, we find such finding to be clearly erroneous. The record reflects no rural subdivision development being located within near proximity of the subject tracts. There is no evidence in the record that defendants ever considered subdividing these properties into residential lots. At the time the petition for expropriation was filed the property was being used for agricultural purposes and at the trial, some five years later, the land was still being used for the same purpose. In sum, there is simply no evidence in the record to support the conclusion that the acreage designated as Tier 2 of Tract 1 was adaptable and would be used for rural homesite subdivision development in the not-too-distant future. Cf. State, Dept. of Highways v. Terrace Land Co., Inc., 298 So.2d 859 (La. 1974).
In regard to whether the road frontage property 250 feet on either side of the permanent right of way incurred severance damages, the three appraisers again differed in opinion.
Angers, who opined the highest and best use of both tracts in their entirety was agricultural, found that Tract 1 suffered no severance damages and that Tract 2 suffered *760 severance damages only in the small irregular shape of land that was created when an angle point was placed on that tract. (See appendix map A). He opined that the isolation of this irregular shaped piece of land from the remainder of the parent tract would result in "an interruption of fee ownership and decrease the flexibility of future uses for this property".
Chappuis, appellant's other expert, did not find any severance damages. On cross examination, he testified that he had performed a number of studies to test the theory of whether pipelines caused severance damages. He concluded from his studies that no matter what type of land was involved (farm land, commercial, residential, etc.), there was no "differential in price". One of his studies involved a subdivision in Vermilion Parish. According to his testimony, the "lots were not selling any differently". He opined that his studies had shown that, "as a general rule, the price remains the same whether there's a pipeline on it or not".
Gremillion, defendants' appraiser, believed that there would be severance damages along the full length of the pipeline, on the residential as well as the agricultural land.
To bolster his position that damage would occur to property within 250 feet of either side of the pipeline, Gremillion presented plats of two subdivisions that had pipelines passing through certain tracts within the subdivisions. Both of the subdivisions were in Vermilion Parish. In one of the subdivisions, Vermilion Palms, two adjoining tracts that had a pipeline passing through the side of one of the tracts sold for a combined price of $11,000.00, or $5,500.00 per tract. These tracts were 100 feet wide for a total of 200 feet, well within the 250 foot severance damage area that Gremillion said existed. In this same subdivision, Gremillion pointed to a tract of land approximately 300 feet away from the same pipeline, well outside the hypothetical 250 foot severance damage area, that sold for $12,000.00 alone. This tract was the same size as the two tracts that were closer to the pipeline. In the second subdivision, Meadowlark Park, the results were essentially the same. Two adjoining lots, each approximately 250 feet wide, that had a pipeline running across a portion of each sold for less than the other tracts within the subdivision. The trial court found the testimony of Cecil B. Gremillion, defendants' expert, more credible than that of plaintiff's experts.
In expropriation cases, much discretion is granted to the trial judge in weighing the testimony of experts. Faustina, supra; Southwest Louisiana Electric Membership Corp. v. Duhon, 313 So.2d 366 (La. App. 3rd Cir.1975), writ denied, 318 So.2d 52 (La.1975). After reviewing the record, we cannot find an abuse of the trial court's discretion in accepting Gremillion's opinion. We believe that defendants proved by a preponderance of the evidence that severance damage occurred to the road frontage property within 250 feet of either side of the pipeline for a depth of 210 feet. Severance damage from placement of natural gas pipelines, though difficult to prove to an exactitude, has been almost universally recognized under these conditions by our courts. See Michigan Wis. Pipe L. Co. v. Sugarland Develop. Corp., 221 So.2d 593 (La.App. 3rd Cir.1969), writ denied, 254 La. 469, 223 So.2d 872 (1969); Texas Gas Transmission Corporation v. Hebert, 207 So.2d 368 (La.App. 3rd Cir.1967); and cases cited therein.
However, we do not believe that defendants proved by a preponderance of the evidence that severance damages occurred to the remaining land which has a highest and best use for agricultural purposes.
Appellant's experts generally agreed that no severance damages occurred to the agricultural land of Tract 1. One of plaintiff's experts found some small severance damage to the second tract. Defendants' expert, Gremillion, presented evidence that pertained only to rural residential property. Gremillion, although he felt that the plow depth might be affected on the agricultural land by the permanent right of way, presented no evidence to substantiate his *761 belief. Gremillion did not testify that the agricultural land would be adversely affected in any other manner.
The trial court, in its written reasons, does not clearly indicate whether it found a right to severance damages for the remaining agricultural land. The trial court does indicate that it accepted Gremillion's testimony as the most credible. However, at the same time, the court substantially reduced the severance damage amount found by Gremillion (the court appeared to have cut Gremillion's severance damage calculations in half). At any rate, if the trial court found a right to severance damages for the agricultural property, we conclude that such finding is manifestly erroneous.
Considering our conclusions aforestated, we next consider whether the trial court's award for severance damage is excessive.
The term "severance damages" describes those compensable damages which flow from the partial expropriation of a tract of land. They consist of the difference between the fair market value of the remaining property affected by the permanent right of way before and after the taking. Missouri Pacific R. Co. v. Nicholson, supra; State, Department of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir. 1979); Southwest Louisiana Electric Mem. Corp. v. Beck, 299 So.2d 411 (La. App. 3rd Cir.1974), writ denied, 302 So.2d 30 (La.1974).
Each of the three real estate appraisers came to a determination of a per acre fair market value before the taking after researching the selling price of comparable properties in Vermilion Parish.
Angers based his before taking fair market value of $2,500.00 per acre for all of the property after researching 17 comparable sales that took place on or before October 1, 1979. His estimation was based upon an agricultural highest and best use. He opined that Tract 1 suffered no severance damage and that Tract 2 suffered severance damages in the amount of $763.00.
Chappuis calculated a fair market value for the land as of October 17, 1979, the date of the judgment of entry. His estimation was based on the road frontage property being used for residential purposes while the remainder would continue as agricultural land. He reviewed selling prices for nine comparables that sold during 1979, 1980 and 1982. He opined that the frontage property had a fair market value before the taking of $6,500.00 per acre. Chappuis found no severance damages.
Gremillion calculated severance damages using two different formulas after researching nine allegedly comparable properties that sold during 1978 and 1979. Gremillion's calculations took into account his three tier theory, which we have already rejected. Based upon his three tier theory, one of his calculations found $40,603.00 in severance damages, while the other calculation showed $37,781.45 in severance damages.
The trial judge awarded $20,000.00 in severance damages. His written reasons do not indicate how he reached this figure. We cannot be sure whether he used Gremillion's first or second set of calculations. We only know that he accepted Gremillion's conclusions over those of the other appraisers. Plaintiff contends that the trial court's calculation of severance damages is in error. We agree.
Gremillion performed one of his calculations in the following manner:
Frontage property
(500' width × 210' depth) ÷ 43,560 = 2.4 acres
2.4 acres × $12,000/acre = $28,800 × 30% = $8640
He then calculated the severance damages for his hypothetical second tier and the remainder. These three values totaled $37,781.45.
Appellant takes issue with the use of the $12,000.00 per acre before taking fair market value for the road frontage. He contends there is no basis in the record for such a valuation. We agree.
*762 Of the nine comparables that Gremillion used, not one of them came close to having a selling price of $12,000.00 per acre. Gremillion's other method for calculating severance damages used an overall fair market price for all of the acreage involved (tier 1-residential; tier 2-residential; tier 3-agricultural) of $4,000.00. In arriving at this overall per acre valuation, Gremillion gave the road frontage property a fair market value before the taking of $10,000.00 per acre. There is support in the record for valuing the road frontage property at $10,000.00 per acre.
Plaintiff does not argue with Gremillion's use of the 210' depth nor with the 30% diminution in value used in Gremillion's calculations, so we will adopt those figures in our calculations.
We therefore recalculate the amount of severance damages in the following manner:
Road Frontage
Tract 1
(500' width × 210' depth) ÷ 43,560 sq. ft./acre = 2.4 acres
(2.4 acres × $10,000) × 30% = $7200.00
Tract 2
(378' width × 210' depth) ÷ 43,560 sq. ft./acre = 1.82 acres
(1.82 acres × $10,000) × 30% = $5460.00
These two figures total $12,660.00 in severance damages. The trial court's judgment will be amended to reflect a reduction in severance damages from $20,000.00 to the sum of $12,660.00.
Appellant does not question the trial court's award to defendants for the permanent servitude in the amount of $7,344.00.
Since the amount of just compensation and severance damages, according to our calculations, still exceeds the amount tendered by appellant, we affirm the trial court's grant of attorney's fees and court costs to defendants.
For the above and foregoing reasons, the judgment of the trial court is amended to read as follows:
"ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Defendants, Dr. Ardley Hebert and Mrs. Elaine Duclos Hebert, and against Plaintiff, ANR Pipeline Company (formerly Michigan Wisconsin Pipeline Company), in the sum of TWENTY THOUSAND EIGHT HUNDRED FIFTY-TWO & NO/100 DOLLARS ($20,852.00) as compensation for the rights acquired in the `Judgment of Entry' rendered herein on October 17, 1979. It is
FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff pay to defendant $2508.00 in attorney's fees. It is
FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff pay to defendants judicial interest on the TWENTY THOUSAND EIGHT HUNDRED FIFTY-TWO AND NO/100 ($20,852.00) DOLLARS from October 17, 1979 until paid.
Costs of these proceedings are assessed to plaintiff."
Costs of this appeal are assessed one-half (½) to appellant and one-half (½) to appellees.
AFFIRMED AS AMENDED.
*763 
*764 
NOTES
[1] Judge John S. Pickett, Jr. of the 11th Judicial District Court and Judge Roy B. Tuck, Jr. of the 30th Judicial District Court participated in this decision as Judges Pro Tempore of the Third Circuit Court of Appeal.
[2] The record reflects that, prior to suit, plaintiff tendered the sum of $11,403.60 as full compensation for the servitude area, temporary work space area and severance damages. The tender was refused.
[3] The record reflects that Michigan used the work space area from October 17, 1979 to May 6, 1980, a period of seven months.