538 So.2d 717 (1989)
LILLY, INC.
v.
ARGUS TECHNICAL SYSTEM, INC., et al.
A & M GLASS CO.
v.
AKRAM, INC., et al.
Nos. 88-CA-1419, 88-CA-1420.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1989.
Rehearing Denied March 15, 1989.
*718 Peter S. Koeppel, Abbott, Best & Meeks, New Orleans, for PPG Industries, Inc.
Charles A. Kronlage, Jr., A Professional Law Corp., New Orleans, for Lilly, Inc. and Akrom, Inc.
Sidney M. Bach, Bach & Wasserman, Metairie, for A & M Glass Co.
Before BYRNES, LOBRANO and WARD, JJ.
WARD, Judge.
This is an appeal from a judgment in consolidated suits arising from the manufacture, sale and installation of sealed glass window units in a Jefferson Parish building constructed in 1980-81. Lilly, Inc. owned the building. Akrom Inc., the general contractor, owned by the same person who owned Lilly, constructed the building and subcontracted with A & M Glass Company to install the window units. PPG Industries, Inc. manufactured the pre-fabricated, double-pane, sealed glass units which, following installation, developed moisture between the two panes causing fogging and streaking. Other subcontractors, Construction Architectural Products, Inc., who manufactured the aluminum frames and sills and Argus Technical System, Inc., who constructed the inner walls, have been dismissed from these lawsuits.
In August 1982 A & M sued Akrom in Jefferson Parish claiming the balance due under its subcontract which Akrom had refused to pay because it believed A & M improperly installed the units. The suit was transferred to Orleans Parish for consolidation with a suit earlier filed by Lilly against A & M and other subcontractors. Lilly later supplemented its petition naming PPG as a defendant, and after dismissal of the suits against other defendants, the focus of Lilly's suit and this appeal is PPG's *719 liability to Lilly and Akrom's liability to A & M.
The Civil District Court Commissioner to whom the cases were referred recommended judgment in favor of Lilly against PPG and in favor of A & M against Akrom. After adopting the Commissioner's findings and recommendations, the Trial Judge awarded Lilly $141,900.00 from PPG and awarded A & M $15,929.14, the amount due on its subcontract, from Akrom. PPG appeals that portion of the judgment finding it liable for all of Lilly's damages; Akrom appeals that portion of the judgment which requires it to pay A & M the balance on the subcontract. We affirm.
The Commissioner's recommendations and thereafter the Trial Court's judgment are largely based on findings of fact which concluded that PPG's window units had a manufacturing defect or that PPG failed to provide adequate installation instructions. This Court may disagree with those findings, particularly as to a manufacturing defect; but we cannot say those findings are manifestly erroneous.
A & M installed the PPG units on the second, third and fourth floors of the building. The insulated PPG units are comprised of glass panes separated by a hermetically sealed air space. An aluminum spacer separates the panes at their perimeter. The spacers are filed with a substance called desiccant to absorb moisture. The entire perimeter of the unit is sealed with a hot melt sealant substance.
Before the building was completed, four of the units failed and were replaced by PPG. Later, ten more units failed and were also replaced by PPG. By trial, 116 of the 120 units had failed. The parties do not dispute that the units failed because the seal surrounding the panes deteriorated, allowing moisture to enter the space between the double panes. The reason the seal deteriorated is in dispute.
PPG claims that the seal broke because the construction of the sill system into which the units were installed allowed water to accumulate in the "rabbet" area, the area in which the unit stood. Specifically, PPG contends that its units should have been installed in a frame having "weep holes" in the rabbet area by which any water entering the frame would be able to exit. Also, PPG claims that the natural weep system through which water could have exited had been caulked.
Lilly, on the other hand, contends that the seals failed because of a manufacturing defect for which PPG is responsible. Alternatively, Lilly contends that even if accumulated water did cause the seals to break, PPG failed to adequately warn users of its products that the units must be installed so as to guard against water accumulation in the "rabbet" area.
The dispute in the trial court and in this appeal are questions of fact, and PPG's appeal is primarily grounded on allegations of manifest error of the Commissioner and the Trial Court in findings of fact. To show that the record supports those findings of fact, the evidence is summarized below.
To test PPG's contention that the units failed because of the presence of accumulated water, Lilly's expert conducted an experiment in which he took portions of one of the windows which had the sealant attached along with fragments of glass, and immersed the samples in water for over seven months. The bond between the sealant and the glass fragments remained intact. The Trial Judge found that PPG did not logically explain why the bond had remained intact for that length of time when, according to its expert's claims, the mere presence of water for only two weeks should destroy the bond. To refute Lilly's expert PPG's expert testified that the experiment was invalid because the test failed to simulate the movement caused by the expansion and contraction of the two panes naturally occurring within the unit, movement which creates constant stress on the unit. As Lilly points out, however, the simple immersion test performed is quite similar to tests accepted by the American Society for Testing and Materials and approved by organizations upon which PPG relies. Nonetheless, even assuming PPG's complaints about the experiment are meritorious, the experiment at least raises questions *720 as to whether accumulated water was the only possible source of the failure of the seal.
Indeed, PPG's own experts testified that unit failures could result from applying the sealant at the wrong temperature, failing to put or putting too much desiccant in the spacer, using water-saturated desiccant, moving the unit too soon after applying the sealant, rotating the unit on its corner after application of the sealant, failing to apply sufficient sealant or storing the unit improperly. All of these causes would be attributable to the manufacturer, PPG.
Overall, the evidence supports the Trial Judge's finding that the sealant failure was more probable than not caused by a manufacturing defect than by any problems with the construction of the sill system or installation of the units in the sill system.
PPG also assigns error to the Trial Judge's finding that it failed to inform product users that a defect may be caused by not weeping the rabbet area to allow water to seep out, and by improper installation and caulking the natural weep which would allow water to accumulate. Because the Trial Judge found that the unit failures were caused by a manufacturing defect instead of the presence of accumulated water, his finding on PPG's failure to warn users of the need to weep the rabbet area was not essential to his judgment.
Nevertheless, the record shows that "Glazing Instructions" were placed on each pane, and provided: "sash sill weeped to outdoors; imperative with Weatherpane, equivalent of three 3/8" weep holes per sill." Blueprints provided by the window sill manufacturer show that the sill system used in the building has weep holes. Angelo Marsalone, owner of A & M, testified that the aluminum sill system that was installed with a metal to metal contact will naturally weep to the outdoors between the "stop" and the "sill". None of the PPG witnesses who had inspected the building explained why the weep system in this building was inadequate. Lilly's witnesses, who had had many years of experience with these types of window systems, indicated that an aluminum frame system with weep holes in the rabbet area of the sills would not be practical because liquid glazing would leak out. Angelo Marsalone testified he told employees of Lilly to stop caulking between the glass and the stop, because it would trap water.
Thus, the evidence is inconsistent at best, but it does not prove improper installation or caulking, and it does not show that the Commissioner's and Trial Court's finding of a manufacturing defect is manifestly erroneous.
If, in fact, weeping the rabbet area of the sill was essential to the proper performance of PPG's units, then PPG was obligated to communicate this crucial fact to users of its product. Instead, throughout PPG's inspections of the building and its replacement of failed units, PPG never indicated that the sill system was not properly weeped.
The Glazing Instructions, the only information concerning these units given to Lilly or A & M, are vague and confusing. They refer to wooden frames; they merely state that the sill must be weeped to the outdoors; they depict the rabbet area without weep holes; and they permit the use of an equivalent weep system.
PPG argues that it fulfilled its duty to warn users of the need to weep the rabbet area because this instruction is included in both the "Sweets catalog," a trade journal available to contractors, and in PPG's quality control manual, an in-house document. Neither was given to Lilly or A & M by PPG after purchase or delivery of these units, and neither Lilly nor A & M can be charged with knowledge of their contents.
The Trial Judge found that the sill system was in fact weeped to the exterior in accordance with the only instructions PPG provided with its product. This finding was made to show that if indeed, as PPG claimed, the units failed because of the accumulation of water in the rabbet area, then PPG should have warned its customers of the necessity of weeping the rabbet area. Although not essential, the finding nevertheless reinforced the inconsistencies in PPG's position. We do not find manifest error in the Trial Judge's conclusion that *721 PPG failed to warn product users of the necessity of weeping the rabbet area of the sill.
PPG also assigns error to the Trial Judge's decision to allow a witness to testify for Lilly as to the amount of damages Lilly sustained because Lilly failed to identify the witness in response to interrogatories propounded by PPG. Although Lilly should have identified the witness and the scope of his testimony prior to trial pursuant to La. C.C.P. art. 1428, the Commissioner allowed the witness to testify only with the understanding that if PPG felt prejudiced, the Commissioner would leave the case open so that PPG could present rebuttal evidence. PPG never advised the Commissioner or the Trial Judge that it wanted to present rebuttal evidence, nor can we conclude that PPG was surprised or prejudiced by the testimony of this witness who merely calculated the cost of replacing the failed units. Hence, we find that the Commissioner did not abuse his discretion in allowing the witness to testify.
PPG also argues in its brief that Lilly's claim against it had prescribed by the time Lilly named it as a defendant. PPG did not file an exception raising the issue of prescription at either the trial or appellate level, but rather raises the issue only in its brief. La.C.C.P. art. 927 states in part: "[t]he court cannot supply the objection of prescription, which must be specifically pleaded." This applies to both the trial and the appellate court. Michigan Wisconsin Pipeline Co. v. Hebert, 488 So. 2d 754 (La.App. 3rd Cir.), writ denied 493 So.2d 636 (La.1986). Thus, although the peremptory exception of prescription may be heard for the first time by the appellate court, it must be presented in a formal pleading and cannot be injected as an issue in the case by brief or oral argument. La. C.C.P. art. 2163. Bergeron v. Houma Hospital Corporation, 514 So.2d 1192 (La. App. 1st Cir.1987), writ denied 517 So.2d 812 (La.1988). The issue of prescription, therefore, is not properly before this Court. Though we need not address PPG's prescription argument, to put the issue to rest we have considered the argument and find that it is without merit for the following reason.
Claims against a seller or manufacturer for defective products are grounded in warranty. Rey v. Cuccia, 298 So.2d 840 (La.1974). Damages caused by breach of warranty in a contract of sale are founded in redhibition and subject to a one year prescriptive period from the date of sale. McDermott, Inc. v. M-Electric & Construction Co., 496 So.2d 1105 (La.App. 4th Cir.1986); La.C.C. art. 2534. The prescriptive period does not begin to run in favor of a manufacturer, who is presumed to know its product's defects, until the defect is discovered by the user and all attempts to repair are abandoned by the manufacturer. Fleur de Leis Apartments v. Davidson Sash, 364 So.2d 234 (La.App. 3rd Cir. 1978), writ denied 366 So.2d 572 (La.1979).
After the initial replacement of four failed units before the building was completed, PPG replaced ten more units in February or March of 1983. Clearly, the problem with and failure of these units was gradual and progressive, and neither Lilly nor PPG knew of its magnitude, which ultimately resulted in the failure of almost all of the units. PPG's replacement of failed units in February and March 1983 were repair attempts or remedial action to alleviate the problem. Lilly named PPG as a defendant in August 1983, 6 or 7 months after ten units were replaced. Lilly's suit was not barred by one year liberative prescription.
Therefore, finding no merit in PPG's assignments of error, we affirm the Trial Court judgment in favor of Lilly against PPG.
Akrom also appealed, assigning error to the portion of the judgment requiring it to pay A & M the balance owed under the subcontract between Akrom and A & M. Akrom argues that A & M as a subcontractor is liable for the defective units manufactured by PPG because they are materials furnished by A & M, and Akrom argues the Trial Judge erred by not holding A & M liable in solido with PPG. We find no error in this portion of the judgment.
*722 The Trial Judge found that Lilly's damages resulted solely and entirely from PPG's product liability for a manufacturing defect, not from poor workmanship in A & M's installation. Furthermore, the invoices for the sale of the PPG units show that the units were sold directly to Akrom by PPG, so that it was Akrom, the general contractor, who furnished defective materials, not A & M. The record supports the Trial Judge's findings that A & M is not responsible for the defective units, and that A & M is entitled to the balance due from Akrom for the work performed when it installed the units.
Accordingly, the Trial Court judgment is affirmed; all costs of this appeal are assessed equally to PPG and Akrom.
AFFIRMED.