719 So.2d 1110 (1998)
FAIR GROUNDS CORPORATION
v.
ADT SECURITY SYSTEMS, Mid-South, Inc.; ADT Security Systems, Inc.; et al.
No. 97-CA-2375.
Court of Appeal of Louisiana, Fourth Circuit.
September 23, 1998.
Rehearing Denied November 16, 1998.
*1111 Wendall H. Gauthier, Julie B. Beiser, Gauthier, Downing, Labarre, Beiser & Dean, Metairie, and T. Peter Breslin, Jr., P.J. Stakelum, III, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, for Plaintiff-Appellant Fair Grounds Corporation.
C.G. Norwood, Jr., Margaret Diamond, McGlinchey Stafford, John Gregory Odom, Stuart E. Des Roches, New Orleans, and Robert E. Couhig, Jr., Leslie A. Lanusse, William J. Kelly, III, Adams & Reese, New Orleans, for Defendants-Appellants ADT Security Systems, Inc. and ADT Security Mid-South, Inc.
C. Edgar Cloutier, Christovich & Kearney, New Orleans, for Defendant-Appellant Reliance National Indemnity Company.
Donald A. Hoffman, Robert I. Siegel, William M. Blackston, Hoffman, Siegel, Seydel, Bienvenu & Centola, New Orleans, and Todd *1112 Denenberg Grotefeld & Denenberg, Southfield, MI, for Defendant-Appellee Allianz Underwriters Insurance Co.
Roy C. Cheatwood, Brent B. Barriere, Nancy Scott Degan, Thomas M. Beh, Phelps Dunbar, New Orleans, for Intervenors-Appellants Insurance Company of the West, Travelers Indemnity Company, and Royal Indemnity Company.
Charles M. Ponder, III, Hulse & Wanek, New Orleans, for Defendants-Appellees A. Blum Construction Company, Continental Casualty Co., and National Fire Ins., Co. of Hartford.
Before KLEES, LOBRANO and MURRAY, JJ.
KLEES, Judge.
This case presents claims for property damage and alleged related losses arising from a fire that destroyed several buildings at the race track owned by the Fair Grounds Corporation on the evening of December 17, 1993. After an investigation into the cause of the fire, the Fair Grounds brought suit against the alarm company which had previously installed a fire protection system at the racing facility. The Fair Grounds' subrogated property insurers also intervened in this lawsuit seeking to recover insurance payments made to the Fair Grounds after the fire. Both the Fair Grounds and the alarm company also brought claims against a building contractor who had performed renovation work at the Fair Grounds premises during which certain heat detectors were removed and allegedly reinstalled. Following a jury trial, judgments were rendered in favor of the Fair Grounds and the subrogated insurers and against the alarm company and its insurers. These appeals followed.

FACTS
The Fair Grounds, which was established in 1872, is one of the oldest thoroughbred horse racing tracks in the country. Prior to 1993, the Fair Grounds was comprised of a racetrack, plus five interconnecting buildings, namely, the jockey quarters, the paddock, the grandstand, the clubhouse and the turf club.
The record indicates that at approximately 6:50 p.m. on the evening of December 17, 1993, smoke was seen in the area of the jockey quarters, and several minutes later, the building began to experience electrical problems. By 7:40 p.m., flames had engulfed the ceiling on the first floor of the jockey quarters. At 7:43 p.m., the fire alarm sounded in the race track's security office, indicating fire in the jockey quarters building. At the same time, the alarm company's central monitoring center in Houston, Texas received a signal of fire at the Fair Grounds. After speaking with Fair Grounds' security personnel, the alarm company notified the New Orleans Fire Department at 7:49 p.m. The fire department arrived at the Fair Grounds at 7:52 p.m., but was unable to contain the fire. The fire eventually destroyed all of the buildings at the Fair Grounds, except the turf club which sustained smoke and water damage.
Following extensive investigation by official agencies and insurers, investigators traced the origin of the fire to electrical wiring in a concealed space above a drop ceiling on the ground floor of the two-story jockey quarters building. It was subsequently determined that this area was not equipped with adequate heat detectors, and the fire was permitted to burn in this area undetected.
A fire detection system was first installed at the Fair Grounds by ADT Security Systems in 1969. In 1986, the Fair Grounds contracted with ADT to update the system with heat detectors and a state-of-the-art monitoring component. On November 1, 1990, the Fair Grounds and ADT entered into a contract in which ADT agreed to install, inspect and monitor its fire detection systems. This contract was in effect at the time of the fire on December 17, 1993.
The record further indicates that in 1987, Fair Grounds contracted with A. Blum Construction Company ("Blum") to renovate the interior of the jockey quarters building. In connection with this renovation, Blum contacted ADT to remove the heat detectors in the jockey quarters building and reinstall them after the renovation work was complete. *1113 At the same time, the Fair Grounds contracted with ADT to install additional heat detectors in the jockey quarters buildings after Blum completed the renovation. During the investigation after the fire, however, only one heat detector was found in the area of the jockey quarters.

The Insurance Contracts
At the time of the fire, the Fair Grounds was insured against property losses by three insurance companies. Allianz Underwriters Insurance Company ("Allianz") issued an all risk policy to the Fair Grounds which insured property losses to the limit of $5,000,000.00. Allianz paid its policy limits on March 2, 1994. In consideration of this payment, Allianz obtained a Subrogation Receipt from the Fairgrounds. Royal Indemnity Company ("Royal") also issued an all risk policy to the Fair Grounds which insured property losses to the limit of $5,000,000.00. The Allianz policy was listed as primary insurance in the Royal policy. On February 28, 1994, Royal issued a check to the Fair Grounds in the amount of its policy limits. Royal entered into a subrogation agreement with the Fair Grounds on March 3, 1994. Travelers Indemnity Company of Illinois ("Travelers") issued an all risk policy to the Fair Grounds which covered direct physical loss to the insured's property. The limits of liability were stated in the policy to be $24,165,234.00. The policy also stated that there was $10,000,000.00 in underlying insurance, and the Allianz policy was listed as the leading underlying insurance policy.[1] Travelers contended that its liability was limited by a schedule contained in the policy, and subsequently paid the Fair Grounds $9,478,790.00 based on the terms of the policy. Upon payment, Travelers entered into a subrogation agreement with the Fair Grounds.
In addition to these policies, there existed a policy of insurance issued by Insurance Company of the West (ICW) to the owner of 200 video poker machines that were located on the Fair Grounds premises. The video poker machines were destroyed in the fire, and ICW made payments to the owner in the amount of $2,223,224.00 pursuant to the terms of the insurance policy. By agreement of the parties, ICW was subrogated to the claims of the Fair Grounds against the alleged tortfeasor in the present lawsuit.

The Lawsuit
As a result of extensive damages sustained in this fire, the Fair Grounds Corporation filed the instant suit on December 15, 1994 for property damages, interruption of business losses and other damages particularized in their original petition for damages. The Fair Grounds initially named as defendants ADT Security Systems, Mid-South, Inc. and ADT Security Systems, Inc. (collectively referred to as "ADT"), as well as several other defendants who were dismissed prior to trial.
On December 16, 1994, three of the subrogated insurance companies, Royal, Travelers and ICW (hereinafter referred to as "Carriers") intervened as additional plaintiffs in this lawsuit. The fourth insurance company, Allianz, filed a separate petition for intervention on February 27, 1997, the day before the start of trial.
The Fair Grounds and the intervenors subsequently amended their petitions to add as defendants two of ADT's liability insurers - National Union Fire Insurance Company and Reliance National Indemnity Company. Further, in its first supplemental and amending petition filed on February 8, 1995, the Fair Grounds named as defendants A. Blum Construction Company and its insurer, alleging that Blum was negligent in its design and installation of the electrical work within the jockey quarters building. On September 12, 1996, the Fair Grounds filed a third supplemental and amending petition, in which it asserted Blum violated building codes in performing its obligations as general contractor during the 1987 renovations.
Defendants, ADT, National Union, Reliance and Blum, all denied liability for plaintiff's and intervenors' claims and filed answers accordingly. In addition, ADT filed a reconventional demand against the Fair Grounds and a third-party demand against *1114 the Fair Grounds' general liability insurer, United National Insurance Company, wherein ADT sought to be indemnified against any loss it might sustain by reason of the claims asserted against it. ADT's claim for indemnity was based on a contractual agreement with the Fair Grounds that contained a limitation of liability. ADT also filed a cross-claim against Blum.

Action of the Trial Court
Jury trial of this matter took place in Civil District Court from March 3, 1997 - March 26, 1997. At the conclusion of plaintiff's and intervenors' cases, the trial judge granted Blum's motions for directed verdict and dismissed all claims against Blum prior to submission to the jury. The judgment granting Blum's motion for directed verdict as to the claims of the Fair Grounds and the intervenors was signed by the trial court on March 20, 1997. On March 25, 1997, the trial court signed the judgment granting Blum's motion for directed verdict as to the cross-claim brought by ADT. The remaining claims against ADT and its insurers were submitted to the jury, and on March 26, 1997, the jury returned a verdict in favor of the Fair Grounds and its subrogated insurers.
In response to the jury interrogatories, the jury found ADT to be guilty of negligence and gross negligence. The jury also found the Fair Grounds to be negligent and apportioned fault, finding ADT to be 85% at fault and the Fair Grounds 15% at fault. The jury assessed the Fair Grounds' total property damages at $56,936,034.00. The jury also found that intervenors/insurers should be awarded sums based on their subrogation rights that amounted to approximately half of the amounts paid to the insured after the fire.
On April 17, 1997, the trial court entered judgment against ADT and its two insurers, limiting the judgments against the insurers to their respective policy limits. In this judgment, the trial court adjusted the recoveries of Travelers, Royal and Allianz to reflect the amount paid by each insured to the Fair Grounds.[2] The judgment also reduced the recovery of the Fair Grounds and the insurers by the 15% assessment of comparative fault assessed by the jury. The judgment contained the following awards.

Fair Grounds $31,847,157.40
Travelers 8,056,971.50
Royal 4,250,000.00
Allianz 4,250,000.00
ICW 1,386,846.00
 ______________
 $49,790,974.90

This judgment further dismissed ADT's claim for indemnity against the Fair Grounds based on the jury's finding of ADT's gross negligence. The judgment also granted interest from the date of judicial demand and awarded 85% of the taxable costs to the Fair Grounds, Travelers, Royal, Allianz and ICW.
The parties brought several post-trial motions, which were denied by the trial court. However, on May 19, 1997, the trial court granted plaintiff's motion for new trial for the sole purpose of amending the previous judgment to provide that the defendant's insurers, National Union Fire Insurance Company and Reliance National Indemnity Company were solidarily liable with the defendant, ADT, to the extent of their policy limits. The April 17, 1997 judgment of the trial court was amended accordingly.

The Appeals
Several appeals were brought from these judgments. The Fair Grounds devolutively appealed from the March 20, 1997 judgment of the trial court granting the directed verdict in favor of Blum. ADT and its insurer, Reliance[3], also devolutively appealed from the March 25, 1997 judgment of the trial court granting the directed verdict and dismissing its claims against Blum.
Further, ADT and Reliance suspensively appealed from the judgment of the trial court dated April 19, 1997 as amended on May 19, *1115 1997. The Fair Grounds also filed a devolutive appeal from this judgment. In addition, the Carriers and Allianz each filed devolutive appeals from this judgment of the trial court.

Post-Trial Settlements
Following the entry of these appeals, the Fair Grounds entered into a settlement agreement with ADT and Reliance. To evidence this agreement, the Fair Grounds filed a Partial Satisfaction of Judgment in this Court on December 1, 1997, which provides in pertinent part:
FAIR GROUNDS CORPORATION, judgment creditor in this matter, declares that the judgment in this case in its favor and against ADT SECURITY SERVICES, INC .... and RELIANCE NATIONAL INDEMNITY COMPANY ("Reliance") has been satisfied to the extent that no further sums are due from ADT or Reliance; however, the Fair Grounds has reserved all rights to contest those portions of the judgment awarding sums to other judgment creditors.
At the same time, ADT and Reliance also filed in this court a Motion to Substitute Counsel and Advise of Partial Settlement in which they stated that ADT and Reliance had assigned "all of their surviving rights against all other parties to this appeal to Fair Grounds which has undertaken to indemnify ADT and Reliance against any and all claims by all other parties to this appeal." ADT and Reliance also moved the Court to permit them to substitute the Fair Grounds' counsel as counsel for ADT and Reliance solely for the purposes of pursuing the assignment of appeal rights.
By order of this court dated December 4, 1997, the Fair Grounds' counsel was permitted to substitute as counsel for ADT and Reliance, and previous counsel for ADT and Reliance was permitted to withdraw from prosecution of the appeal.
Thereafter, the Fair Grounds, as assignee of the appeal rights of ADT and Reliance, filed into this Court a motion to withdraw designated appeal issues previously raised by ADT and Reliance in their appeal. The Fair Grounds sought to dismiss all of ADT's appeal issues, except for the issue of jury's finding of gross negligence. Travelers, Royal and ICW challenged the Fair Grounds' actions through a Motion to Stay the Appeal and an Exception of No Right of Action or in the Alternative to Realign Parties. In response to the Fair Grounds motion, Allianz also filed into this Court a Motion to Enforce Contracts and Alternative Exception of No Right of Action/Motion to Dismiss.
By order of this Court dated January 26, 1998, the motion of the Fair Grounds was granted and all issues raised on appeal by ADT and Reliance were dismissed except the first issue concerning the jury's finding of gross negligence on the part of ADT. At the same time, this Court deferred to the appeal hearing any ruling on the exceptions of no right of action and the alternative motion to realign the parties, and denied all other motions.
On March 18, 1998, the Fair Grounds filed their appellate brief in this Court assigning several errors of the trial court, including the issue regarding gross negligence that the Fair Grounds asserted in their capacity as assignee of ADT and Reliance. Also on March 18, 1998, the Carriers, ICW, Travelers and Royal filed their original appellate brief in this court. On April 7, 1998, Allianz filed an appellee brief in this Court, and has apparently abandoned its motion for appeal.
On July 27, 1998, the Fair Grounds, ADT and the Carriers (all parties to this lawsuit except Allianz) filed a Joint Motion to Dismiss in this Court. The parties represented in this motion that all claims of the Carriers against ADT had been settled and the parties moved that these claims be dismissed with prejudice. Carriers specifically reserved their rights against Allianz for attorney's fees and costs and against ADT and its insurer for the taxable costs awarded by the judgment. The parties also filed into this Court on this date a Release and Satisfaction of Judgment indicating that no further sums were due to the Carriers from ADT except the taxable court costs awarded in the trial court's judgment.

REMAINING ISSUES ON APPEAL

Assignment of ADT's appeal rights
The first issue presented for our review is whether the plaintiff, as assignee of ADT's *1116 appeal rights, is entitled to have this Court rule on an issue which is directly contrary to the argument advanced by plaintiff at the trial level and upon which judgment in favor of plaintiff was rendered.
On November 17, 1997, ADT and Reliance filed a brief in this Court assigning several issues for appellate review. Appellants assigned as error both the jury's finding of liability against them, as well as the amount of damages awarded.
Following appellants' settlement agreement with the Fair Grounds and the assignment of appeal rights, this Court, on motion of the Fair Grounds, dismissed all of appellants' appeal issues, except the liability issue regarding the jury's finding of gross fault on the part of ADT. The Fair Grounds, in its capacity as assignee of ADT's appeal rights, seeks to assert this issue in their own appeal brief filed in this Court on March 18, 1998.
The intervenors (including the Carriers and Allianz) initially objected to this assignment of appeal rights and filed exceptions of no right of action in this Court seeking dismissal of ADT's appeal. However, by a Joint Motion to Dismiss filed in this Court on July 27, 1998, the Carriers have dismissed all claims against ADT and Reliance, except their claim for payment of taxable costs. Thus, the only remaining intervenor with an interest in the assignment of ADT's appeal rights is Allianz, who did not participate in the dismissal of claims.
In its Motion to Enforce Contracts and Alternative Exception of No Cause of Action/Motion to Dismiss filed in this Court, Allianz contends that based on ADT's settlement agreement with the Fair Grounds, ADT and Reliance no longer have an interest in the appeal in this Court. Allianz argues therefore that the appeal of ADT and its insurer should be dismissed. Further, Allianz contends that the Fair Grounds is contractually prohibited from taking an assignment of ADT's appeal rights, and thus the issue advanced on appeal by the Fair Grounds in its capacity as assignee of ADT should likewise be dismissed. After reviewing the documentation contained in the record and the applicable law, we find this argument to have merit.
The Fair Grounds contends that an assignment of appeal rights is permissible under Louisiana law. La. C.C. art. 2642 sets forth the general rule that all rights, other than strictly personal obligations, may be assigned. Further, pursuant to La. C.C. 2652, litigious rights can be transferred from one party to another under certain specified circumstances. In its brief, the Fair Grounds argues that its actions in settling with defendants did not prejudice the claims of the subrogated insurers. The Fair Grounds argues that the settlement and indemnification agreements are not in violation of its insurance policy or the subrogation agreement as the Fair Grounds only settled its own claims against defendants, and did not obtain satisfaction of the intervenors' claims against defendants.
Allianz contends that under the terms and conditions of the insurance policy issued to the Fair Grounds and based on the subrogation agreement between the parties, the Fairgrounds is contractually prohibited from seeking a reversal of the jury's finding of gross negligence on the part of ADT.
The insurance contract between Allianz and the Fair Grounds contains the following language on the subject of subrogation:

Subrogation
In the event of any payment made hereunder, the Company shall be subrogated to all the Insured's rights of recovery therefore against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.
(Emphasis added.)
Further, the subrogation receipt signed by the Fair Grounds on March 4, 1994 following the payment of proceeds by Allianz provides in pertinent part:
Warranted no settlement has been made by the undersigned with any person or corporation against whom claim may lie, and no release had been given to anyone responsible for the loss, and that no such settlement will be made nor release given *1117 by the undersigned without the written consent of the said Insurance Company and the undersigned covenants and agrees to cooperate full with said Insurance Company in the prosecution of such claims and to procure and furnish all papers and documents necessary in such proceedings and to attend court and testify; ...
At the trial of this matter, the Fair Grounds and the intervenors presented evidence and argued to the jury that ADT was grossly negligent in its installation and maintenance of the fire alarm system at the Fair Grounds. In order for the Fair Grounds or the intervenors to recover from ADT, a finding of gross negligence was necessary based on a contractual agreement between the parties which limited ADT's liability for ordinary negligence. The contractual agreement contained an indemnity clause, which required the Fair Grounds to indemnify ADT for acts of negligence. The Fair Grounds argued at trial that this limitation of liability only applied to acts of ordinary negligence, and that ADT was not entitled to indemnification for its acts of gross negligence in the cause of the fire in this case.
Following trial, the jury returned a verdict stating that ADT was grossly negligent, and a monetary award was made to the Fair Grounds on this basis. The jury's finding of gross negligence was one of the errors assigned by ADT and Reliance in their appeal.
After the Fair Grounds received a satisfaction of judgment from ADT, the Fair Grounds, acting in its capacity of assignee of ADT's appeal rights, argued in this Court that the jury finding of gross negligence on the part of ADT was erroneous and must be reversed. This argument is directly contradictory to the argument advanced by the Fair Grounds at the trial level and upon which the verdict of the jury was based. The net effect of this argument at this posture in the case is an attempt to prevent the intervenors from executing on their judgments against ADT and Reliance.
The Fair Grounds had a contractual obligation to cooperate with its subrogated insurance company's pursuit of its subrogation claims and to refrain from prejudicing the insurance company in these efforts. Under the circumstances presented in this case, we find that the settlement and indemnification agreements between ADT and the Fair Grounds constitute a breach of clear terms of the insurance policy issued by Allianz to the Fair Grounds in which the Fair Grounds agrees "to do nothing after loss to prejudice [the subrogation] rights" of the insurance company. Further, these agreements also constitute a breach of the subrogation receipt signed by the Fair Grounds in which the Fair Grounds agrees to cooperate with the prosecution of the insurance company's subrogation claims.
Although the Fair Grounds contends that its actions did not prejudice the claims of its insurers, we conclude that no action could be more fundamentally prejudicial to Allianz' subrogation rights than the Fair Grounds affirmatively attacking a judgment rendered in favor of Allianz which enforces the very claim obtained by the contractual subrogation. Having accepted the insurance payment from Allianz and signing a subrogation receipt, the Fair Grounds became contractually bound to assist Allianz in recovering from ADT. The post-trial actions of the Fair Grounds attempt to accomplish exactly the opposite result. Because the Fair Grounds settled its own claims with defendants, the only result of the Fair Grounds' pursuit of this issue on appeal would be a reversal of the judgment rendered in favor of Allianz, whom the Fair Grounds was contractually bound to assist in recovering from defendants. Under these circumstances, we interpret the Fair Grounds' post trial agreements to be in clear violation of the contractual agreements between the Fair Grounds and its insurer, Allianz.
Thus, we conclude that the Motion to Substitute Counsel and Advise of Partial Settlement insofar as it attempts to assign ADT's surviving appeal rights against Allianz to the Fair Grounds is unenforceable and without effect. Based on its contractual agreements, the Fair Grounds is precluded from asserting the issue of ADT's gross negligence on appeal. As this issue is the only remaining issue of ADT's appeal, ADT and its insurer no longer have any interest in this appeal, and their appeal must be dismissed. Accordingly, *1118 Allianz' exception of no right of action is granted and the suspensive appeal of ADT and Reliance is hereby dismissed.

Fair Grounds' Appeal
The Fair Grounds asserted several issues in its appeal of the trial court's judgment. The first issue asserted by the Fair Grounds attacks the trial court's judgment in favor of Allianz and the other intervenors. However, as the other intervenors have settled their claims, the Fair Grounds' arguments only pertain to the judgment rendered in favor of Allianz.
Allianz contends that the appeal of the Fair Grounds is moot as plaintiff acquiesced in the judgment by its settlement agreement with defendants, and therefore has no right of appeal from the trial court judgment pursuant to La. C.C.P. art.2085. However, although the Partial Satisfaction of Judgment indicates that the Fair Grounds settled its own claims with ADT and its insurers and stated that no further sums were due from ADT or Reliance, the Fair Grounds in this document specifically "reserved all rights to contest those portions of the judgment awarding sums to other judgment creditors." By this appeal of the judgment awarded to Allianz, the Fair Grounds is not appealing from the judgment rendered in its favor against ADT and Reliance, but is appealing in its own capacity a judgment rendered in favor of its insurer-subrogee and another judgment creditor.
The Fair Grounds is not seeking by this appeal to obtain more money from ADT as that issue has been settled by the Partial Satisfaction of Judgment. Rather, the Fair Grounds is challenging the trial court's judgment awarding sums in favor of Allianz. Under these circumstances, we conclude that the appeal brought by the Fair Grounds has not been rendered moot by the Fair Ground's settlement of its claims with defendants. The Fair Grounds has a right to appeal from the judgment of the trial court rendered in favor of Allianz.
Allianz also argues that the Fair Grounds claims on appeal are extinguished by the legal concept of confusion. Confusion extinguishes an obligation when the qualities of obligee and obligor are united in the same person. La. C.C. art.1903. Based on the trial court's judgment, ADT has an obligation to its judgment creditor, Allianz. Although ADT assigned its appeal rights to Fair Grounds, the assignment did not unite the qualities of obligee and obligor with respect to this obligation. ADT is still obligor and Allianz is still obligee. Confusion therefore does not extinguish this appeal.

Prescription
The Fair Grounds argues in its brief that Allianz' claim of subrogation has prescribed. Although the Fair Grounds did not raise this issue at the trial level, the Fair Grounds filed into this Court an exception of prescription as to Allianz' subrogation claim. The Fair Grounds argues that Allianz' petition for intervention, filed on February 27, 1997, over two years after the original petition was filed, has prescribed under the one-year liberative prescription applicable to delictual actions.
The exception of prescription is a peremptory exception that may be pled at any stage of the proceeding, even on appeal, prior to a final judgment, but must be brought by a formal pleading. La. C.C.P. art 2163; Lilly, Inc. v. Argus Technical System, Inc., 538 So.2d 717, 721 (La.App. 4th Cir.1989).
The facts relevant to the prescription issue are as follows. The fire occurred on December 17, 1993. Allianz paid its policy limits of $5,000,000.00 to the Fair Grounds on March 4, 1994 and obtained a subrogation receipt on the same date. On December 15, 1994, the Fair Grounds filed suit against ADT and several other defendants. The other insurers (Travelers, Royal and ICW) intervened in this suit the following day based on their subrogation claims. Allianz' petition for intervention was filed on February 27, 1997, and the trial court granted leave to intervene on February 28, 1997.
Delictual actions, such as the one here, are subject to a liberative prescription of one year. La. C.C. art. 3492. Prescription is interrupted when the obligee commences action against the obligor in a court of competent jurisdiction and venue. La. C.C. art. 3462. The Fair Grounds contends *1119 that prescription was not interrupted under this article as the subrogation in favor of Allianz created an obligation that only Allianz could assert, and the suit by the Fair Grounds could not interrupt prescription as to Allianz' claims.
However, Louisiana jurisprudence has held that when several parties share a single cause of action, suit by one interrupts prescription as to all. Louviere v. Shell Oil Co., 440 So.2d 93, 96 (La.1983). Further, in Allstate Ins. Co. v. Theriot, 376 So.2d 950 (La. 1979), the Supreme Court held that a suit filed by a worker's compensation insurer against an alleged tortfeasor interrupted prescription as to the employee's claim against the tortfeasor. In the present case, Allianz' petition for intervention arose out of the same factual occurrence as that initially pleaded by the Fair Grounds, and both the Fair Grounds and its subrogated insurers shared a single cause of action. Under these circumstances, we conclude that the Fair Grounds' timely-filed suit against defendants interrupted the running of prescription against Allianz. Accordingly, the Fair Grounds' exception of prescription is denied.

Judgment in favor of Allianz
The Fair Grounds next contends that the trial court judgment failed to properly subordinate the subrogated claims of Allianz[4] to the award in favor of the Fair Grounds. The Fair Grounds argues that the judgment of the trial court gave the property insurer an improper preference and left the Fair Grounds with an overall loss even after its award against ADT was taken into account.
In support of its position, the Fair Grounds cites to La. C.C. art. 1826, which provides in pertinent part:
An original obligee who has been paid only in part may exercise his right for the balance of the debt in preference to the new obligee.
The Fair Grounds also relies on the Louisiana Supreme Court decision in Southern Farm Bureau Cas.Ins. v. Sonnier, 406 So.2d 178, 180 (La.1981), which states:
Nevertheless, subrogation cannot injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment.
* * * * * *
Accordingly, when an insurer pays his insured only part of the damages to which the insured is entitled from a tortfeasor, the insurer becomes only partially and subordinately subrogated to the insured's right, and the insured is entitled to exercise his right for the balance of the partially paid claim in preference to the insurer-subrogee.
Thus, under Louisiana law, the original subrogor is always preferred to the subrogee in such a case, and the subrogee can only claim that which remains after the subrogor has been paid. Sonnier, 406 So.2d at 180; See also, Bond v. Commercial Union Assur. Co., 407 So.2d 401, 409, n. 2 (La.1981).
In calculating the amounts to be awarded to Travelers, Royal and Allianz, the trial court awarded each insurer a sum equal to what that insurer had paid, less 15% to account for the fault allocated to the Fair Grounds. Thus, Allianz received a judgment for $4,250,000.00, or 15% less than the $5,000,000.00 paid by Allianz. The trial court awarded the Fair Grounds $31,847,157.40, which it calculated by reducing the entire judgment by the assessment of comparative fault and then deducting the sums awarded to the subrogated insurers.
The Fair Grounds argues that by rendering judgment in favor of Allianz where the Fair Grounds had not been fully compensated for its loss, the trial court violated the provisions of La. C.C. art. 1826 and the holding of the Sonnier case.[5] We agree.
*1120 The total property damage loss of the Fair Grounds set by the jury was $56,946,034. Pursuant to their contractual agreements, the Fair Grounds' property insurers paid for part of this loss in the amount of $19,478,790.00. Thus, the actual loss of the Fair Grounds set by the jury was $37,457,244.00 (or $56,946,034.00 - 19,478,790.00). Under Louisiana law, the Fair Grounds is entitled to be paid for this loss in preference to the subrogated insurers. Although Allianz argues that the Fair Grounds has been fully compensated for this loss by the receipt of other settlements, insurance payments and legislative intervention, this issue is not before us here. Our task is to determine to what extent recovery should be granted to a partial subrogee based on the amount recovered from the tortfeasor as evidenced by the judgment of the lower court.
The trial court rendered judgment in favor of the Fair Grounds for the sum of $31,847,157.40. The trial court rendered the remainder of the award in favor of the subrogated insurers. The trial court reached the figure awarded to the Fair Grounds by reducing the jury's finding of loss by the comparative fault assessed to the Fair Grounds. Although this reduction was proper in the trial court's judgment against ADT, the reduction was not proper in setting the sums due to Allianz as subrogated insurer. While comparative negligence principles prevent the Fair Grounds from recovering the full amount from ADT, those principles do not reduce the actual loss which the Fair Grounds sustained in the fire.
In rendering judgment in favor of Allianz, the trial court failed to apply the preference of the insured to be paid for its loss before paying the claims of the subrogated insurers. The judgment rendered against ADT satisfied $31,847,157.40 of plaintiff's loss. The remaining amount of the loss, $5,610,086.60, could not be assessed against the tortfeasor, but the Fair Grounds was nevertheless entitled to exercise its right for this balance in preference to the partial subrogee. Stated another way, Allianz as partial subrogee was only entitled to a judgment in its favor from what was left after the original subrogor, the Fair Grounds, has been paid for its loss.
Thus, the trial court erred in awarding $4,250,000.00 to Allianz on its subrogation claim when the insured-subrogor, the Fair Grounds, had not been fully compensated for its property loss. Although the difference between the amount of the loss and the judgment against the tortfeasor was based on an assessment of comparative fault on the part of the Fair Grounds, we hold that as the primary property insurer of the Fair Grounds, Allianz contracted to bear this loss. The amount of the loss for which the insured was not compensated is greater than the amount of Allianz' subrogation claim, and Allianz was therefore not entitled to recover any of the payment made to the Fair Grounds on the basis of its property loss. Accordingly, the judgment of the trial court in favor of Allianz Underwriter Insurance Company and against ADT and Reliance is reversed.

Attorney's Fees
Based on the above holding vacating the judgment in favor of Allianz, we do not reach the issue of whether Allianz must contribute to the attorney's fees incurred by Allianz or the Carriers.

Directed Verdict
The Fair Grounds next contends that the trial court erred in granting a directed verdict in favor of Blum. The Fair Grounds argues that the evidence in the record shows that Blum was the general contractor in the 1987 renovations of the jockey quarters during which ADT was retained to remove and reinstall heat detectors, and thus the Fair Grounds was answerable for ADT's negligence.
Blum filed an appellee brief in this matter contending that the directed verdict was properly granted as the evidence at trial indicated Blum was not the general contractor, but was merely an agent for the Fair Grounds in procuring the services of ADT.
On August 25, 1998, Blum filed into this court an Exception of No Right of Action and in the Alternative Motion to Dismiss the Appeal. Blum now argues that this Court should not consider the Fair Grounds' appeal of the directed verdict granted in favor of *1121 Blum as there are no justiciable issues presented therein. We agree.
As previously stated herein, the appeal of ADT and Reliance of the jury's finding of liability has been dismissed. Thus, the finding that ADT's negligence accounts for 85% of plaintiff's damages is now final. In addition, the Fair Grounds has failed to appeal from the jury verdict which assesses plaintiff's comparative fault at 15%. Thus, any ruling by this Court on the trial court's judgment granting Blum's motion for directed verdict would have no effect on the liability determinations. In addition, based on the settlement agreement with ADT and Reliance and on our ruling herein, the Fair Grounds has been fully compensated for its loss as determined by the jury.
Further, the record contains the agreement executed between Blum and ADT in 1987. In this agreement, ADT agreed to indemnify Blum for any acts of negligence in conjunction with the performance of work.. Thus, even if the Fair Grounds were successful in obtaining a determination of negligence on the part of Blum, the Fair Grounds would have to indemnify Blum for any loss based on the indemnification agreement entered into by the Fair Grounds and ADT.
Under the circumstances presented herein, any ruling by this Court on the propriety of the trial court's judgment on Blum's motion for directed verdict would have no practical effect and would amount to an advisory opinion. It is a well-established principle of law that appellate court should not render advisory opinions from which no practical result would follow. United Teachers of New Orleans v. Orleans Parish School Board, 355 So.2d 899 (La.1978).
Accordingly, Blum's exception of no right of action is hereby granted, and we will therefore not consider the Fair Grounds' appeal of the directed verdict in favor of Blum.

Carrier's Appeal - Taxable Costs
In the Joint Motion to Dismiss filed in this Court on July 27, 1998, the Carriers reserved their right to pursue from defendants ADT and Reliance the award for 85% of the taxable costs of this litigation. We remand this issue to the trial court for a determination of the amount of costs incurred.

CONCLUSION
For the reasons assigned herein:
1. That portion of the trial court's judgment of May 19, 1997 which renders an award in favor of Allianz Underwriters Insurance Company is reversed.
2. Allianz' exception of no right of action is granted and the suspensive appeal of ADT and Reliance is hereby dismissed.
3. The Fair Grounds' assignment of error as to the finding of gross negligence on the part of ADT is dismissed.
4. Blum's exception of no right of action is granted and the Fair Grounds' appeal of the directed verdict rendered in favor of Blum is dismissed.
5. The issue of the taxable costs awarded to Travelers, Royal and ICW in the trial court's judgment is remanded to the trial court for determination of the amount of those costs.
6. Each party shall bear its own costs of this appeal.
JUDGMENT IN FAVOR OF ALLIANZ UNDERWRITERS INSURANCE COMPANY REVERSED; APPEAL OF ADT AND RELIANCE DISMISSED; BLUM'S EXCEPTION OF NO RIGHT OF ACTION GRANTED; CASE REMANDED FOR DETERMINATION OF TAXABLE COSTS.
NOTES
[1] Although counsel for Allianz contended in oral argument before this Court that the three insurance policies were not ranked as primary and excess, the record does not support this argument.
[2] The amount awarded to ICW by the jury, $1,386,846.00, remained unchanged.
[3] ADT's primary insurer, National Union Fire Insurance Company, settled with the Fair Grounds and the intervenors following entry of judgment and therefore did not perfect an appeal. The record contains a Receipt, Release and Partial Satisfaction of Judgment executed by the parties on June 18, 1997 indicating that the plaintiff and intervenors accepted the sum of $9,301,244.80 from National Union in partial satisfaction of judgment.
[4] In its brief, the Fair Grounds included Travelers and Royal in this argument. However, based on the Joint Motion to Dismiss filed by these parties indicating their claims have been settled, it is not necessary to address the trial court judgment rendered in favor of Travelers and Royal.
[5] The Fair Grounds argues that its litigation expenses should be considered in determining its net loss. However, we do not reach this issue based on the dismissal of the other subrogated insurers from this appeal.